# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **FIRST AID CELLULAR LLC, JEFFREY WHARTON; and MAX L. WHARTON;** | |
| **Plaintiffs,** | **8:14CV253** |
| **vs.** | **MEMORANDUM AND ORDER** |
| **WE FIX IT CELLULAR REPAIR; WE FIX IT REPAIR; ANDREW HARBERTS; and DOES,** | |
| **Defendants.** | |

This matter is before the Court on the Motion to Dismiss, or, in the alternative, Motion to Transfer Venue (Filing No. 8) filed by Defendants We Fix It Cellular Repair, We Fix It Repair,[1] Andrew Harberts, and Does (collectively "Defendants"). For the reasons discussed, the Motion will be granted, and the Plaintiffs' claims will be dismissed.

## BACKGROUND

For purposes of the pending Motion, the Court accepts as true all well-pled factual allegations in the Plaintiffs' Complaint (Filing No. 1), although the Court need not accept Plaintiffs' legal conclusions.

Plaintiffs First Aid Cellular, LLC ("FAC"), Jeffrey Wharton, and Max L. Wharton (collectively "Plaintiffs") allege that Defendants' use of the term "You Break It . . . We Fix It!" constitutes infringement of Plaintiffs' registered mark. FAC is a Delaware Corporation with its principal place of business in Nebraska. Jeffrey Wharton is

---

[1] The Complaint is not clear as to whether "We Fix It Cellular Repair" and "We Fix It Repair" are distinct entities. The Defendants have submitted evidence that both are the same entity and that the proper name is "We Fix It, LLC." For purposes of this Order, the distinction is not dispositive, and "We Fix It Cellular Repair" and "We Fix It Repair" will be referred to collectively as "We Fix It."

identified as the COO of FAC, and Max Wharton its CEO.[2] We Fix it Cellular is an Iowa Corporation with its principal place of business in Iowa, and Defendant Andrew Harberts ("Harberts")[3] is an individual residing in Iowa. Plaintiffs allege that Harberts owns and operates We Fix It Cellular, as well as the We Fix It Cellular website and facebook account.

Plaintiffs are in the business of repairing electronic devices such as smartphones, gaming consoles, tablets, and computers in Omaha, Nebraska, and surrounding communities in Iowa. Several companies offer Plaintiffs' services to their employees through discount programs, leading to some world-wide notoriety. Defendants also offer smartphone and tablet repair services. Defendants have not purchased any products from FAC, and FAC has not licensed its brand or permitted Defendants to represent that they are affiliated in any way with FAC.

Plaintiffs discovered that, in the course of their business, Defendants were using the phrase "You Break It, We Fix It." Plaintiffs allege that the phrase "You Break It, We Fix It," is a trademark registered to FAC. Plaintiffs contacted Defendants regarding Defendants' use of the phrase, and Defendants represented to Plaintiffs that they would discontinue use of the phrase. Plaintiffs allege that despite their representations, Defendants continued to use the phrase in commerce.

Plaintiffs assert claims under the Lanham Act for trademark infringement, 15 U.S.C. § 1114, and false designation, 15 U.S.C. § 1125(a). Plaintiffs seek an injunction

---

[2] The Complaint does not identify Max and Jeffrey Wharton's state of residence, but documents attached and incorporated into the Complaint indicate that both are residents of Nebraska.

[3] The docket mistakenly spelled Harberts's name "Harbets." The Court takes judicial notice that the Complaint and the evidence identify Defendant as Andrew Harberts.

against Defendants, treble damages under 15 U.S.C. § 1117(a), and attorney fees and costs.

## DISCUSSION

**I.      FAC Cannot Proceed Pro Se in Federal Court**

In the cover sheet for their pro se civil complaint, Plaintiffs identify FAC as a pro se party. "[T]he law does not allow a corporation to proceed pro se." *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996) (citing 28 U.S.C. § 1654); *see also Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02, (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel.") Both Max and Jeffrey Wharton signed the verification of the coversheet (Filing No. 1 at ECF 7), and Jeffrey Wharton signed the Complaint on behalf of FAC, apparently in his capacity as Chief Operating Officer.[4] (Filing No. 1 at ECF 19.) The Court takes judicial notice that neither Jeffrey nor Max Wharton is a registered user of this Court's CM/ECF system, and their names are not found within the Nebraska Bar Directory[5] nor in the Nebraska Supreme Court Attorney Services Division's licensed lawyer search.[6] Defendants' Motion should have alerted Plaintiffs to the need to find counsel for FAC, yet no attorney has entered an appearance for FAC, nor have Plaintiffs otherwise

---

[4] An attempt by a non-attorney to sign the Complaint on behalf of FAC may be considered the unauthorized practice of law. *See* Neb. Ct. R. § 3–1001, 1003.

[5] Nebraska State Bar Association Lawyer Search for last name "Wharton," available at http://www.nebar.com/search/custom.asp?id=2319 (last visited October 29, 2014).

[6] Nebraska Supreme Court Attorney Services Division, "Search Attorneys" function to search for last name "Wharton," available at https://mcle.wcc.ne.gov/ext/SearchLawyer.do (last visited October 29, 2014).

responded. FAC cannot proceed pro se in this matter, and all claims asserted by FAC must be dismissed.

## II.   Personal Jurisdiction Over Defendants

### A.   Standard of Review

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a prima facie case showing there is personal jurisdiction over the defendant." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). The Court "views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor." *Id.* To withstand Defendants' motion under Fed. R. Civ. P. 12(b)(2), Plaintiffs "must state sufficient facts in the complaint to support a reasonable inference that [Defendants] may be subjected to the jurisdiction of the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). Plaintiffs' prima facie case "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (internal quotations and citations omitted).

### B.   Court's Jurisdiction Over Defendants

Personal jurisdiction over a defendant must satisfy the requirements of the forum state's long-arm statue and of due process. *Dever*, 380 F.3d at 1073. Nebraska's long-arm statute allows this Court to exercise personal jurisdiction over a person who: (1) transacts any business in the state; (2) contracts to supply services or things in the state; (3) causes tortious injury by an act or omission in the state; and (4) causes tortious injury in the state by an act or omission outside the state if the person regularly

4

does or solicits business in the state. *See* Neb. Rev. Stat. § 25-536 (a)-(d) (Reissue 2008).  Because Nebraska's long-arm statute has been construed to permit jurisdiction to the extent of constitutional limits, the issue before this Court is whether the exercise of personal jurisdiction comports with due process. *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001).

Due process requires that a defendant have sufficient minimum contacts with the forum state such that summoning the defendant would not offend the "traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 475, 476 (1985).  "Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." *Pecoraro*, 340 F.3d at 562 (citing *Clune v. Alimak Ab*, 233 F.3d 538, 544 n. 8 (8th Cir. 2000)). The minimum contacts must be such that the defendant "purposefully avails itself of the privilege of conducting activities within the forum State" and "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King,* 471 U.S. at 475 (citations omitted); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch,* 518 F.3d at 586 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-415 (1984)).  "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state."

5

*Id.* at 586.   "The plaintiff must make a prima facie showing, however, that the defendant's contacts were not 'random,' 'fortuitous,' or 'attenuated.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)).   "Specific jurisdiction on the other hand is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Id.* (citing *Burger King,* 471 U.S. at 472).

In evaluating whether a defendant's contacts in the forum state satisfy due process, a court considers five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts;[7] (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties.   *Miller*, 528 F.3d at 1091 (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994)); *see also Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010) (stating that the same minimum contacts analysis applies in Lanham Act cases to determine if the allegedly tortious act was committed within the forum state). Applying the five *Miller* factors to this case, the Court concludes that it cannot exercise personal jurisdiction over Defendants.

### 1.   *Nature, Quality, and Quantity of Contacts With Nebraska*

The nature and quality of Defendants' contacts with Nebraska are not sufficient to support personal jurisdiction. Plaintiffs allege that Defendants "have extensive

---

[7] "The third factor—the relation of the cause of action to the contacts—applies only in the specific jurisdiction context and is immaterial in a general jurisdictional inquiry." *Steinbuch*, 518 F.3d at 586 (citing *Johnson,* 444 F.3d at 956).

contacts with and conduct business within, the State of Nebraska and this judicial district …." (Filing No. 1 at ECF 9.) Defendant Harberts is a resident of Iowa. (Filing No. 9 at ECF 11.) We Fix It Cellular is an Iowa corporation that operates a single store located in West Des Moines, Iowa. (*Id.*) All smartphone and tablet repairs are performed at We Fix It's store in West Des Moines, Iowa. (*Id.*) All We Fix It employees are located in West Des Moines, Iowa. (*Id.*) We Fix It is not registered to do business in Nebraska, and does not have any offices, inventory, bank accounts, real estate, or personal property in Nebraska. (*Id.* at ECF 9-10.) We Fix It does not advertise through direct mailing, newspaper, magazines, or television, but relies on word-of-mouth through wireless provider stores in West Des Moines, Iowa. (*Id.* at ECF 10.) None of these facts suggest Defendants individually or collectively had any contacts in the State of Nebraska. Accordingly, no evidence in the record demonstrates the Defendants had any contacts with the State of Nebraska, let alone a systematic and continued presence that would subject Defendants to general jurisdiction. Accordingly, these factors do not support jurisdiction.

### 2.    Relationship Between the Cause of Action and the Contacts

Specific jurisdiction occurs when the defendant has purposefully directed its activities at residents of the forum state and litigation results from alleged injuries arising out of or relating to those activities. *Steinbuch*, 518 F.3d at 586. In the Complaint, Plaintiffs allege that "Defendants have caused smartphone and tablet repair services to be advertised, promoted, and sold in this judicial district; [and] the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district …." (Filing No. 1 at ECF 9-10.) These and Plaintiffs' other factual allegations suggest

7

Plaintiffs are asserting specific jurisdiction on the basis of We Fix It Cellular's website and Facebook page.

To determine whether an Internet website or presence provides sufficient minimum contact to invoke specific jurisdiction, the Eighth Circuit adopted the analytical approach pronounced in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997).  *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710 (8th Cir. 2003) (citing *Zippo*, 952 F.Supp. at 1124). In *Zippo*, the court held that the "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." *Zippo*, 952 F.Supp. at 1124. To measure the nature and quality of the commercial activity, the Eighth Circuit uses a "sliding scale" approach:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Lakin*, 348 F.3d at 710-11 (citing *Zippo*, 952 F.Supp. at 1124)).

The uncontroverted evidence shows We Fix It's website and Facebook page are at least slightly interactive. We Fix It posts information about its services and products on its website. On the website, customers may make appointments for in-store repairs by filling out an online questionnaire, but cannot order directly or purchase products.

8

(Filing No. 9 at ECF 12.)  Potential customers may also mail-in a smart phone or tablet for repairs with a downloadable form, but We Fix It has never mailed a repair to a customer in Nebraska. (*Id.*) We Fix It's Facebook page is used to advertise services and to post information about itself. (*Id.*) Through the Facebook page, customers may contact We Fix It about possible services, but cannot make a purchase or complete a business transaction. (*Id.*)   We Fix It also advertises through Facebook, but its advertising targets the Des Moines, Iowa, area. (*Id.*)

The Court concludes We Fix It's Internet presence is insufficient to establish specific jurisdiction over Defendants. Under the *Zippo* analysis, "whether specific personal jurisdiction could be conferred on the basis of an interactive website depends not just on the nature of the website but also on evidence that individuals in the forum state accessed the website in doing business with the defendant." *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010). Although We Fix It's website and Facebook page are at least somewhat interactive, there is no evidence in the record that Defendants "engaged in any transaction or exchange of information" with a Nebraska resident through either forum. *Id.* The mere possibility that Defendants could have contact with Defendants through the website or Facebook page is not sufficient to confer specific jurisdiction. *See id.* Accordingly, specific jurisdiction cannot be found based on Defendants' Internet presence.

Plaintiffs also assert specific jurisdiction because Defendants caused tortious injury to Plaintiff in Nebraska. Plaintiffs appear to invoke the *Calder* effects test. *See Calder v. Jones,* 465 U.S. 783, 789-90 (1984). Under the *Calder* effects test, Plaintiffs must establish that Defendants acts "(1) were intentional, (2) were uniquely or expressly

aimed at the forum state, and (3) caused harm, the brunt of which was suffered-and which the defendant knew was likely to be suffered-in the forum state." *Johnson*, 614 F.3d at 796 (quoting *Lindgren v. GDT, LLC,* 312 F.Supp.2d 1125, 1132 (S.D. Iowa 2004)). There is no evidence that Defendants' actions were intentional or uniquely aimed at Nebraska, nor is there any evidence or allegation that Defendants knew any harm was likely to occur in Nebraska. Accordingly, the *Calder* effects test provides no basis for personal jurisdiction over Defendants. *See id.* at 797-98 (holding that absent a showing that a website was expressly aimed at the forum state, *Calder* provided no support for Lanham Act claims).

### 3.   Nebraska's Interest in Providing a Forum for its Residents and Convenience of the Parties

While Nebraska may have an interest in providing a forum for its residents, "that interest does not overcome the substantial inconvenience for the parties" to litigate in Nebraska.   *Miller*, 528 F.3d at 1092   ("The inconvenience to the parties and their witnesses, under the facts of this case, is a factor that militates against [the plaintiff] for purposes of establishing personal jurisdiction over [the defendant]."). Requiring Defendants to defend a lawsuit in Nebraska would be an undue burden given the minimal, if any, contacts they have with Nebraska.  Any interest Nebraska may have in this litigation does not outweigh this burden.

### CONCLUSION

All claims asserted by FAC must be dismissed because a corporation may not appear *pro se* in federal courts. The remaining Plaintiffs have failed to show that

Defendants have minimum contacts with Nebraska, and the Court concludes it does not have personal jurisdiction over Defendants. Accordingly,

IT IS ORDERED:

1.    The Motion to Dismiss, or, in the alternative, Motion to Transfer Venue (Filing No. 8) filed by Defendants We Fix It Cellular Repair, We Fix It Repair, Andrew Harberts, and Does, is granted;

2.    This case is dismissed, without prejudice; and

3.    A separate judgment will be entered.

Dated this 3rd day of November, 2014

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge